153 P.3d 217 (2007)
Adolfo CORONADO, a married person doing business as Royal Landscaping & Gardening Company, a sole proprietorship, Appellant,
v.
Patty ORONA, a single person; and Leslie Rucker, a single person, Respondents.
No. 25014-8-III.
Court of Appeals of Washington, Division 3.
February 15, 2007.
*218 Adolfo Coronado (Appearing Pro Se).
Brad L. Englund, Englund Law PS, Yakima, WA, for Respondents.
SCHULTHEIS, J.
¶ 1 Washington contractors cannot sue clients to recover compensation or for breach of contract if the contractors are not properly registered. RCW 18.27.080. One exception to this rule is applicable if the contractor has merely sold or installed a finished product or material that does not become a permanent, fixed part of a structure. RCW 18.27.090(5).
¶ 2 Adolfo Coronado, doing business as Royal Landscaping & Gardening Company, contracted with Patty Orona and her boyfriend, Leslie Rucker (hereafter, Ms. Orona) to landscape around the couple's newly-built home in Yakima. Mr. Coronado was not licensed as a contractor during the period of the contract. After a partial payment, Ms. Orona refused to pay the remaining balance on the bill. Mr. Coronado sued, Ms. Orona responded by showing that he was not properly registered, and the trial court summarily dismissed Mr. Coronado's complaint.
¶ 3 On appeal, Mr. Coronado contends he is not a contractor, and that even if he is, the unpaid portion of his bill is for work that qualifies at least in part for the exemption in RCW 18.27.090(5). He argues that the exempted portion of his work should be segregated from the uncollectible portion. Because we conclude that Mr. Coronado performed landscaping that required a contractor's registration for the entire indivisible contract, we affirm.

FACTS
¶ 4 In March 2005, Mr. Coronado contracted with Ms. Orona to landscape around her Yakima home. In his bid, he proposed to plant shrubs and ground cover, apply landscaping rocks, create gravel walkways, and *219 install a sprinkler system. For these services, including tractor fees, he estimated a cost of $16,450. Ms. Orona paid around one-half of this sum$8,200as a down payment in April. She paid an additional $800 later as partial payment for additional labor and materials. Near the completion of the landscaping project, Mr. Coronado submitted an "Additional Work Invoice" demanding another $49,110 for materials and labor, including rocks, bark, plants, approximately 1,400 feet of retaining walls, and rental of a tractor and trailer. Clerk's Papers (CP) at 96. Unknown to Mr. Coronado at the time, his contractor's license had been suspended in January 2005 due to two default judgments that had impaired his bond.[1] He reinstated his contractor's license in January 2006, after he had essentially completed the Orona project.
¶ 5 When Ms. Orona refused to pay any additional amount, Mr. Coronado filed a complaint in November 2005 for damages due to breach of contract or under the equitable doctrine of quantum meruit. Ms. Orona responded by moving for summary judgment. She argued that Mr. Coronado illegally performed work as a contractor without registering with the Department of Labor and Industries (L & I). RCW 18.27.020(2)(b). She also asserted that he did not comply with the pleading requirements of RCW 18.27.080. After a hearing, the trial court granted Ms. Orona's motion for summary judgment and dismissed Mr. Coronado's complaint. He filed a timely appeal to this court.

CONTRACTOR REGISTRATION
¶ 6 Mr. Coronado argues on appeal that his landscaping contract did not require a contractor's license. Even if he performed as a contractor, he offers alternatively, some of the work was exempted under RCW 18.27.090(5), and that work should be segregated from the unenforceable portions of the contract. Because this is an appeal from a summary judgment, this court considers all facts in the light most favorable to Mr. Coronado and reviews de novo. Cerrillo v. Esparza, 158 Wash.2d 194, 199, 142 P.3d 155 (2006); Arctic Stone, Ltd. v. Dadvar, 127 Wash.App. 789, 794, 112 P.3d 582 (2005). Summary judgment is proper only if there is no genuine issue of material fact and if Ms. Orona is entitled to judgment as a matter of law. Cerrillo, 158 Wash.2d at 200, 142 P.3d 155.
¶ 7 In 1963, the legislature enacted the contractor registration act. Chapter 18.27 RCW. Reflecting the concern that "unregistered contractors are a serious threat to the general public and are costing the state millions of dollars each year in lost revenue" (LAWS OF 1993, ch. 454, § 1), the act "was designed to prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states." Stewart v. Hammond, 78 Wash.2d 216, 219, 471 P.2d 90 (1970). To that end, Washington contractors are required to be registered and bonded. Id. (citing RCW 18.27.020-.040). Those who do not comply are subject to a criminal penalty, RCW 18.27.020, and are denied access to the courts for compensation or for breach of contract claims:
No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract.
RCW 18.27.080; Stewart, 78 Wash.2d at 219, 471 P.2d 90. See also Davidson v. Hensen, 135 Wash.2d 112, 127, 954 P.2d 1327 (1998) (although the contractor registration statute does not render a contract void ab initio, the contract has limited enforceability).
*220 ¶ 8 According to Mr. Coronado, although he was registered as a landscaping contractor until January 2005, and registered again in January 2006, the work he performed for Ms. Orona did not require a contractor's registration. Thus, we first address whether Mr. Coronado was a contractor for the purposes of the contractor registration act, chapter 18.27 RCW.
¶ 9 "Contractor" is defined in part as any person who undertakes to "construct, alter, repair, add to, subtract from, improve, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, project, development, or improvement attached to real estate." RCW 18.27.010(1). A "specialty contractor" is any contractor who is not a "general contractor," defined as a contractor who superintends more than two building trades. RCW 18.27.010(4), (9).
¶ 10 Mr. Coronado contends landscaping does not constitute the construction or improvement of a building or other structure attached to real estate, and therefore does not come under the requirements of the contractor registration act. This is an issue of statutory interpretation, requiring de novo review. Cerrillo, 158 Wash.2d at 199, 142 P.3d 155. To ascertain the meaning of a statute, we first look at its language. Id. at 201, 142 P.3d 155. If the language is clear, we apply it as written. Id. But if the language is ambiguous, we apply various tools of statutory construction to determine its meaning. Id.
¶ 11 No published Washington case has considered whether a landscaper is a contractor. The common meaning of "landscaper" is one who decoratively plans and develops gardens and grounds. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1269 (1993). As in Mr. Coronado's case, landscaping may involve excavation, installation of walkways and plant beds, and construction of retaining walls. See definitions of "landscape" ("to improve by landscape architecture") and "landscape architect" ("arrangement of land . . . involving the placement of structures, vehicular and pedestrian circulation, plantings, and relationships with adjacent areas"), id.
¶ 12 In the plain terms of RCW 18.27.010(1), a contractor constructs, alters, adds to, or improves a building, road, excavation, or any other structure or improvement attached to real estate. Something is "attached" to real estate when it is joined to or adheres to real property. WEBSTER'S, supra, at 140. RCW 18.27.010(1) does not specifically state that a contractor alters or improves real property itself, but the inclusion of roads and excavations in the definition suggests that construction projects involving somewhat permanent improvements to land are covered. Because the plain language of the statute merely suggests rather than explicitly covers landscaping, however, we apply principles of statutory construction to determine whether Mr. Coronado acted as a contractor.
¶ 13 In determining the rational and sensible interpretation of a statute, Washington courts give great weight to the interpretation given by the agency that is charged with the statute's administration. McClarty v. Totem Elec., 157 Wash.2d 214, 228, 137 P.3d 844 (2006); Marquis v. City of Spokane, 130 Wash.2d 97, 111, 922 P.2d 43 (1996). L & I apparently considers landscapers specialty contractors. Its application form for contractor registration includes landscaping as 1 of 61 listed specialty contractors. The form further explains that a landscaper may also need plumber certification, electrical licenses, or elevator certification.
¶ 14 Further evidence that landscaping requires a contractor's license is found in an L & I "Interpretive Bulletin" that distinguishes between major landscape improvement and mere upkeep. This bulletin, issued by L & I in 2002, states that yard maintenance does not require contractor registration. The activity of yard maintenance includes "mowing lawns, weeding flower beds, trimming shrubs, planting flowers, edging, applying fertilizer, spot seeding, repairing sprinklers, rototilling, or applying weed/pest control chemicals." CP at 13. Yard maintenance also includes the shoveling of decorative rock or bark into or out of a truck or pile by use of a wheelbarrow, or the delivery of such materials. On the other hand, "[i]f heavy *221 equipment such as loaders, graders, backhoes, rollers, etc. is required to spread the rock/bark, contractor registration is required." CP at 13.
¶ 15 Mr. Coronado contracted to install a sprinkler system, cut and shape terraces, plant beds with ground cover and shrubs, create gravel walkways, and install nearly 1,400 feet of cinder block retaining walls. He used tractors, trailers, and a crane to load, deliver, and move materials on the site. The use of heavy equipment and the construction of beds, walls, and walkways "attached to" the real property constituted landscaping activities requiring a contractor's registration. RCW 18.27.010(1).

EXEMPTIONS TO CONTRACTOR REGISTRATION
¶ 16 Mr. Coronado next contends that even if the landscaping contract involved some activities that required a contractor's registration, many of his contractual duties were exempted and should have been compensable. RCW 18.27.090(5) exempts "[t]he sale or installation of any finished products, materials, or articles of merchandise that are not actually fabricated into and do not become a permanent fixed part of a structure." Whether a contractor is exempt under RCW 18.27.090(5) is a question of fact; however, even questions of fact may be decided on summary judgment if reasonable persons could reach only one conclusion. Owen v. Burlington N. & Santa Fe R.R., 153 Wash.2d 780, 788, 108 P.3d 1220 (2005); Arctic Stone, 127 Wash.App. at 795, 112 P.3d 582.
¶ 17 Here, the undisputed facts are that Mr. Coronado planted shrubs and ground cover, used cinder blocks to build retaining walls, and spread gravel and bark over prepared terraces and walkways. He contends these activities constituted installation of finished materials that did not become permanent parts of a structure.
¶ 18 As noted in Arctic Stone, there is no easy formula for determining whether something was fabricated into or became a fixed part of a structure. "Factors include whether removal of the material would prevent its reuse or cause substantial damage to the structure, whether the material is more of a decoration than an improvement, and the parties' intent." Arctic Stone, 127 Wash. App. at 796, 112 P.3d 582 (footnotes omitted). Some materials and products that have qualified for this exemption include doors, door jambs, and cabinets, as long as the parties do not intend for these products to become a permanent fixed part of the premises. Harbor Millwork, Inc. v. Achttien, 6 Wash.App. 808, 813-14, 496 P.2d 978 (1972). It takes something more than mere attachment for a material to be fabricated into a structure. Id. at 814, 496 P.2d 978.
¶ 19 The shrubs, ground cover, and gravel installed by Mr. Coronado probably could be removed and reused. Even the cinder blocks used in the retaining walls are not fixed permanently, but are merely stacked together without adhesive. These materials satisfy the first test for an exemption under RCW 18.27.090(5) because they did not become a permanent part of a structure.
¶ 20 On the other hand, reasonable minds would not disagree that raw gravel, bark, and growing plants are not "finished products, materials, or articles of merchandize." RCW 18.27.090(5). A product that is "finished" is completed or in its last stage. See definitions of "finish" and "finished," WEBSTER'S, supra, at 853. The only materials that might qualify as "finished" for the purposes of this exemption are the cinder blocks. Assuming that their installation might be exempted under RCW 18.27.090(5), the question then becomes whether that portion of the landscaping contract could be severed from the rest of the contract and enforced separately.
¶ 21 Whether a contract is divisible depends upon its terms and the intention of the parties. Saletic v. Stamnes, 51 Wash.2d 696, 699, 321 P.2d 547 (1958). Generally, a contract is not divisible if its terms show that the parties intended all its parts to be interdependent. Id. Nothing in the terms of the agreement before this court indicates that the parties separately bargained for installation of the retaining walls. Construction of walled terraces, gravel walkways, a sprinkler system, and planted garden beds was described in an initial bid and in an oral addendum *222 (evidenced by the "Additional Work Invoice" (CP at 96)). No one of these tasks is divisible from the others under the agreement, and most of the tasks require a contractor's registration.
¶ 22 Even if the contract were severable, Mr. Coronado did not move to amend his complaint under CR 15(a) or to voluntarily dismiss any portion of his complaint under CR 41. He is barred from raising these issues for the first time on appeal by RAP 9.12, which limits this court's review to the issues brought to the trial court's attention.
¶ 23 Because the landscaping activities required a contractor's license and the contract as a whole does not qualify for an exemption under RCW 18.27.090(5), Mr. Coronado is prevented by RCW 18.27.080 from collecting compensation or suing for breach of contract. The trial court did not err in granting Ms. Orona's summary judgment dismissal of Mr. Coronado's cause of action.

ATTORNEY FEES
¶ 24 Both parties request statutory attorney fees and costs under RCW 4.84.010, which authorizes statutory fees and costs to the prevailing party. In re Impoundment of Chevrolet Truck, 148 Wash.2d 145, 162, 60 P.3d 53 (2002). As the prevailing party on appeal, Ms. Orona is entitled to statutory fees and costs under RCW 4.84.010.
¶ 25 Affirmed.
WE CONCUR: SWEENEY, C.J., and BROWN, J.
NOTES
[1] Ms. Orona argued to the trial court that Mr. Coronado had full knowledge that his license was suspended. For the purposes of review of this summary judgment dismissal, we consider the evidence in the light most favorable to Mr. Coronado, the nonmoving party. Arctic Stone, Ltd. v. Dadvar, 127 Wash.App. 789, 794, 112 P.3d 582 (2005).